UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

THOMAS FLOWERS, ET AL.                              PLAINTIFFS


VS.                          CIVIL ACTION NO. 3:06CV610TSL-JCS

REGENCY TRANSPORTATION, INC.                        DEFENDANTS
AND TIMOTHY FOSTER


MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of defendants
Regency Tranportation, Inc. (Regency) and Timothy Foster for
summary judgment pursuant to Rule 56(c) of the Federal Rules of
Civil Procedure.  Plaintiffs Thomas Flowers, Shannon Carter,
Clarence Brown, Shirley Dorsey, George Perry, Lekesha Sanders,
Schynies James, Sheila Willis, Sarita McGee and Jerlene Bridges
oppose the motion, and the court, having considered the parties'
memoranda and submissions,[1] concludes that the motion should be
denied.

Defendant Regency, which is owned and operated by defendant
Foster, is a Mississippi company based in Jackson which provides
transportation of Medicaid patients to doctors' offices,
pharmacies and dialysis treatments pursuant to a contract with the
Mississippi Division of Medicaid.  Plaintiffs were all formerly
employed by Regency as drivers, and have brought this action

---

[1]     Defendants' unopposed motion to strike exhibit "f" will
be granted.

claiming entitlement to recover overtime compensation under § 7 of the Fair Labor Standards Act, §§ 29 U.S.C. §§ 201, et seq. Section 7 of the FLSA requires employers to pay overtime wages (at a rate of not less than one and one-half times the regular hourly wage) to employees engaged in commerce who work more than forty hours in a week.  29 U.S.C. § 207(a)(1).  For its part, Regency does not deny that plaintiffs worked more than forty hours a week without overtime pay; but it contends that it was not subject to the requirements of the FLSA because plaintiffs fall within the "motor carrier" exemption to the FLSA.     Under Section 13 of the FLSA, employees whose qualifications and maximum hours of driving are subject to regulation by the Secretary of Transportation (Secretary) under the Motor Carrier Act are exempt from the FLSA's overtime provisions.  29 U.S.C. § 213(b)(1).  For those "motor carriers" subject to the Secretary's jurisdiction, the Secretary may prescribe the "qualifications and maximum hours of service of employees of, and safety of operation and equipment of, a motor carrier." 49 U.S.C. § 31502.  See Shew v. The Southland Corp., 370 F.2d 376, 380 (5th Cir. 1966) (as "there is no concurrent jurisdiction between the Fair Labor Standards Act and the Motor Carrier Act," a motor carrier employee under the jurisdiction of the Secretary "is excluded from the benefits of the overtime provisions of the [FLSA]").

2

Under the Motor Carrier Act, "the Secretary of Transportation has the power to establish qualifications and maximum hours of service for employees who (1) are employed by carriers whose transportation of passengers or property by motor vehicle is subject to the Secretary's jurisdiction under the Motor Carrier Act (MCA); and (2) engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the MCA." Barefoot v. Mid-America Dairymen, Inc., 16 F.3d 1216, 1994 WL 57686, 2 (5th Cir. 1994) (citing 29 C.F.R. § 782.2(a)). Defendants have the burden to establish that the exception applies, and to sustain this burden, must demonstrate that the plaintiffs meet both of these requirements. See id.

"First, their employer, [Regency], must be a motor vehicle carrier subject to the Secretary's jurisdiction–i.e., a carrier engaged in interstate or foreign commerce." See also Lieberman v. Corporate Connection, No. 03-CIV-22814, 2005 WL 5501491, at 1 (S.D. Fla. 2005) ("Secretary of Transportation only has jurisdiction over interstate transportation. ... Only if the Defendant is taking part in interstate commerce can it be subject to the regulations of the Secretary of Transportation, and thereby protected by the Motor Carrier Act."). Second, "the employee himself must also be engaged in interstate commerce before the

3

Secretary of Transportation has jurisdiction over him, and his employment must directly affect the safety of operation of vehicles on the public highways." Barefoot, 1994 WL 57686, at 3 (citing, among other authorities, 29 C.F.R. § 782.2(a)). See also 49 U.S.C. § 31101(2) (defining "employee" as "an operator of a commercial motor vehicle . . . who directly affects commercial motor vehicle safety in the course of employment"). Thus, "[c]ourts determine the Motor Carrier safety exemption by focusing on how the employer's business and the employees' activities affect interstate commerce." Rees v. Souza's Milk Transp., Co., 2007 WL 4374063, *6 (E.D. Cal. 2007).

A "motor carrier," which is defined as "a person providing commercial motor vehicle . . . transportation for compensation," 49 U.S.C. § 13102(14), may engage in interstate commerce either by "actually transporting goods across state lines or (by) transporting within a single state goods that are in the flow of interstate commerce." Barefoot, 1994 WL 57686, at 2 (citations omitted). The former, which is all that is pertinent here, occurs when "passengers, property, or both, are transported by motor carrier between a place in a State and a place in another State". 49 U.S.C. § 13501(a)(1)(A). See also Lieberman, 2005 WL 5501491, at 1-2 (S.D. Fla. April 21, 2005) (employer must show that it provides motor vehicle transportation for compensation between a

4

place in one state and a place in another state).  Addressing this requirement, the court in <u>Lieberman</u> wrote:

> A carrier's involvement in interstate commerce must be established by some concrete evidence such as an actual trip in interstate commerce or proof that interstate business was solicited.  Furthermore, the Defendant's involvement in interstate commerce must be real and actual, not merely hypothetical or conjectural.  If the employer or employee's involvement in interstate commerce could be characterized as de minimus, (sic) they may not be subject to the Secretary of Transportation's jurisdiction at all, and thus are not covered by the Motor Carrier Act.

<u>Lieberman</u>, 2005 WL 5501491, at 2.  In addition to showing that it has engaged in interstate commerce that is more than de minimis, the carrier must demonstrate that the employees to whom the exemption is sought to be applied are also engaged in interstate commerce, and that their employment directly affects the safety of operation of vehicles on the public highways.  <u>Barefoot</u>, 1994 WL 57686, at 3.  As drivers, plaintiffs "clearly engaged in activities directly affecting the safety of operation of vehicles on public highways."  <u>Barefoot</u>, 1994 WL 57686, at 3 (citations omitted).  The question as to them is whether they engaged in interstate transportation.  In the court's opinion, Regency has presented insufficient evidence on these issues to warrant its request for summary judgment.

It is undisputed that in its contract with the Medicaid Division, Regency agreed to provide Medicaid beneficiaries with transportation to their medical appointments "regardless of the

5

location of the appointments," and expressly acknowledged that "this may include transportation to and/or from locations outside of the bidder's service region and may include transports to medical providers in communities outside the state of Mississippi."  However, Regency has presented no evidence as to the extent to which it was actually required to transport patients to out-of-state appointments.  In an affidavit from former Regency office manager Vickie Powell, Powell recites:

> As the office manager I dispatched drivers to transport customers to various locations in Mississippi, Alabama, and Louisiana.                      I dispatched all drivers for both intrastate and interstate trips.  When assigning drivers to make interstate trips, I could call a driver and ask them to make the trip.  The interstate trips were distributed generally among the drivers and the interstate trips were shared indiscriminately by the drivers. I would randomly call drivers and assign interstate trips.  There was no one driver who made all the interstate trips.  All drivers could expect to make a trip from Mississippi to Alabama or Louisiana at some time.

While the tenor of Powell's affidavit seems intended to suggest a regular, if not substantial, interstate aspect to Regency's business, in fact, it provides little information of substance on this issue; her affidavit does not indicate how many out-of-state trips were made.

The only other proof Regency has offered on this issue is a report of a 2004 Department of Labor investigation which concluded that all of Regency's drivers were covered by the Motor Carrier exemption so that consequently, Regency compensation practice (of

6

paying "straight time" for hours worked in excess of forty during a week) did not violate the FLSA.  The "narrative summary" of the investigation recites that Regency's drivers (of which there were thirteen at that particular time) transport patients to appointments "in Louisiana, Alabama and Mississippi," and concludes that all drivers came within the motor carrier exemption.  There is nothing in the DOL's report suggesting the extent of out-of-state travel.[2]

In response to Regency's motion, plaintiffs point out the noticeable absence of proof from Regency as to the total number of trips Regency drivers made to out-of-state destinations or the proportion of those trips to the total number of trips made under its contract with the Medicaid Division.  They note further that in his deposition testimony, Foster, while unable to quantify the number of out-of-state trips made by Regency drivers, conceded that such trips were "sporadic."  And for their part, plaintiffs have presented evidence that out-of-state trips occurred only occasionally and were not a regular part of Regency's business.

---

[2]  In any event, "DOL opinion letters do not warrant significant judicial deference."  Rees v. Souza's Milk Transp., Co., 2007 WL 4374063, *6 (E.D. Cal. 2007); see also Christensen v. Harris County, 529 U.S. 576, 587, 120 S. Ct. 1655, 146 L. Ed. 2d 621 (2000) ("[i]nterpretations such as those in opinion letters ... do not warrant ... deference."); Skidmore v. Swift & Co., 323 U.S. 134, 140, 65 S. Ct. 161, 89 L. Ed. 124 (1944) (opinion letters are entitled to respect but only to the extent that they have the power to persuade).

Specifically, in opposition to Regency's motion, four of the ten plaintiffs, Flowers, Sanders, Willis and Carter, provide affidavits in which each declares that he or she was "responsible for transporting patients to doctor visits in Jackson, Mississippi from Rankin and Simpson counties" and that he or she "did not travel outside the State of Mississippi during the time that I worked for Regency."  In addition, plaintiffs McGee and Perry each state that during the three-year period of his/her employment with Regency, he/she did not travel outside the State of Mississippi more than two times.  Finally, each of the six plaintiffs who have submitted an affidavit recites that "Regency Transportation officials never told me that we were expected or required to travel across state lines."

There is lacking in this case evidence that Regency or its employee/drivers engaged in more than de minimis interstate commerce.  While plainly, there is no requirement that an employer's interstate business be substantial or that its employees engage in a substantial volume of interstate activity in order that the employees come under the jurisdiction of the Secretary of Transportation, the connection by both with interstate commerce must be more than de minimis.  Thus, in Coleman v. Jiffy June Farms, Inc., 324 F. Supp. 664, 670 (S.D. Ala. 1970), aff'd, 458 F.2d 1139 (5th Cir. 1972), the court found both that the defendant employer's "involvement in interstate

8

cartage [was] both static and minimal" and that the employees'
involvement was likewise de minimis, thus dooming the employer's
quest to escape FLSA overtime provisions.  Considering the
employer's activities, the court observed that "[w]hen measured by
revenues," the employer's out-of-state deliveries constituted a
mere .23% of all deliveries in the course of the employer's
business.  As for the employees, drivers for the company, the
court wrote: "[D]efendant, Jiffy Poultry, employs 67
driver-loaders among whom this infinitesimal interstate traffic is
allegedly divided.  Assuming, arguendo, that the interstate work
is so divided, each driver would spend .00343% of his time in
interstate commerce."  Id.  The court acknowledged that "the
Secretary of Transportation's "jurisdiction over safety of
operations is not determined by considerations as to whether the
fraction of the employee's time devoted to safety-affecting work
is substantial" but rather depends on the "character of the
employee's activities."  Id.  It acknowledged, as well, that the
employees at issue were "full-time drivers and loaders," id., and
courts have held without exception that drivers affect highway
safety, see Levinson v. Spector Motor Serv., 330 U.S. 649, 67 S.
Ct. 931, 91 L. Ed. 1158 (1947); Morris v. McComb, 332 U.S. 422, 68
S. Ct. 131, 92 L. Ed. 44 (1947).  Nevertheless, the court
concluded that the subject drivers' "occasional and minimal

9

involvement with interstate commerce" was so insubstantial as to preclude application of the motor carrier exemption, stating,

> [T]he court does not feel constrained to allow an exemption which would deprive 67 working men of overtime compensation on the basis of a minimum of evidence of interstate activity which is minimal in its scope and minimal in its nature.

Coleman, 324 F. Supp. at 670.[3]

---

[3]     This court recognizes that "courts have found drivers to be covered by the motor carrier exemption even where they engage in, or are subject to, only a small percentage of interstate driving." Badgett v. Rent-Way, Inc., 350 F. Supp. 2d 642, 654 (W.D. Pa. 2004). See, e.g., Morris v. McComb, 332 U.S. 422, 68 S. Ct. 131, 92 L. Ed. 44 (1947) (where interstate hauling of freight, which comprised approximately 4 percent of employer's total business, was indiscriminately assigned to employer's drivers, entire class of employee drivers were covered by exemption); Brennan v. Cardinal Indus., Inc., No. C-2-74-563, 1976 WL 1720 (S.D. Ohio Mar. 8, 1976) (exemption applied to employer's truck drivers even though less than one percent of the trips made by drivers during the period in question were interstate transports). Coleman is distinguishable from such cases.

    In one such case, Barefoot v. Mid-America Dairymen, Inc., 1994 WL 57686, at 3 (5th Cir. 1994), the requirement that the employee work for an interstate carrier was satisfied in light of undisputed evidence that the employer was engaged in the transport of goods in interstate commerce in that it shipped millions of pounds of unprocessed milk from facilities in Texas to other states. Considering whether the employees were themselves involved in interstate commerce, the court held that as truck drivers, they were "clearly engaged in activities directly affecting the safety of operation of vehicles on public highways." It then held that although the 26 plaintiffs had collectively made a total of only 20 interstate trips for the employer, "it [was] the character of the activities, 'rather than the proportion of the employee's time or activities,' that determines the jurisdiction of the Secretary under the MCA." Id. (citations omitted). Where the evidence shows that the employer was not engaged in more than de minimis interstate commerce, it will follow that its employees have not done so, even if they are in jobs which affect the safety of operation of vehicles on public highways.

Relying on the <u>Coleman</u> court's holding and reasoning, the court in <u>Kimball v. Goodyear Tire and Rubber Co.</u>, 504 F. Supp. 544, 548 (D.C. Tex. 1980), found the motor carrier exemption inapplicable to thirty-nine truck drivers who sought overtime compensation under the FLSA from their employer.  The evidence showed that less that one percent of the hauls involved were interstate: of a total of 49,329 hauls made by the drivers, only 88 were possible interstate trips, representing .17% of the total hauls.  The court found the facts there to be "more persuasive than in <u>Jiffy-June Farms</u>," stating, "The interstate trips here were 0.17%, as opposed to 0.23%.  In <u>Jiffy-June Farms</u>, the trips were made two to three times weekly; here, on the average only once every three weeks.  Thus, Goodyear is not exempt from the FLSA by virtue of 29 U.S.C. s 213(b)(1)."  <u>Id</u>.  <u>See also</u> <u>Dole v. Circle "A" Constr., Inc.</u>, 738 F. Supp. 1313, 1322 (D. Idaho 1990) (a driver is not exempt under the Motor Carrier Act merely because he takes one or two interstate trips).[4]

_____

[4]   Defendants suggest that regardless of how frequently any driver may have made an out-of-state trip, all its drivers were subject to being called upon to make out-of-state trips, and therefore, its employees were engaged in activities of a character directly affecting the safety of operation of motor vehicles in interstate commerce.  Although numerous courts have held that the second inquiry is satisfied where an employer's drivers could reasonably expect to be called upon to drive in interstate commerce, <u>see</u>, <u>e.g.</u>, <u>Chao v. First Class Coach, Co.</u>, 214 F. Supp. 2d 1263 (M.D. Fla. 2001), here, defendants have not presented evidence sufficient to establish that, in fact, Regency, and hence its drivers, could reasonably expect to be called upon to transport Medicaid patients to out-of-state appointments.  While

These courts recognize that the motor carrier exemption will not relieve an employer of all FLSA overtime obligations if driving in interstate commerce is not a regular and expected part of an employee's duties. Masson v. Ecolab, Inc., No. 04 Civ. 4488(MBM), 2005 WL 2000133, *8 (S.D.N.Y. Aug. 17, 2005) (citing Crooker v. Sexton Motors, Inc. 469 F.2d 206, 210-11 (1st Cir. 1972)). Indeed, "[t]o extend the motor carrier exemption to any driving activity, no matter how infrequent or trivial, would be to encourage employers to send their employees on a minimal number of interstate trips simply to avoid the overtime compensation provisions of FLSA." Id. ("Driving in interstate commerce alone does not trigger the motor carrier exemption. Such driving, however frequent, must have been an expected and regular part of an employee's job duties.").

Citing Brennan v. Schwerman Trucking Co., 540 F. 2d 1200 (4th Cir. 1976), defendants argue alternatively that the Motor Carrier exemption applies because, by virtue of its contract with the Mississippi Department of Medicaid, it "held itself out as operating in interstate commerce." In Brennan, the court concluded that where the exemption, formerly codified at 49 U.S.C. § 304(a)(1), explicitly gave the Secretary of Transportation

that possibility may have existed by virtue of Regency's contract with the Medicaid Division, it appears from the evidence that out-of-state transports may have been more hypothetical than real.

Commission power to regulate "common carriers by motor vehicle" and where Schwerman held itself out as a "common carrier by motor vehicle," Swchwerman was subject to the Secretary's regulation, and thus, the Motor Carrier Act exemption applied.

Initially, the court observes that because the holding in Brennan is antithetical to the methodology for determining the Secretary's jurisdiction set forth in Coleman, defendants' argument does not persuade the court that summary judgment is appropriate.  Moreover, the Brennan decision was based on a finding that Swchwerman was a "common carrier by motor vehicle."[5] At the time Brennan was decided, 49 U.S.C. § 304(a)(1) and (2) gave the Secretary the authority to regulate "common carriers by motor vehicle," as well as "contract carriers by motor vehicle."[6]

_____

[5]      The court further notes that the Motor Carrier Act no longer purports to define "common carrier by motor vehicle" or the related term, "contract carrier by motor vehicle."  In 1983, when the Act was revised, "motor carrier" was substituted for "common carrier by motor vehicle" and "contract carrier by motor vehicle" as "motor carrier" was inclusive of both terms. See 49 U.S.C. § 31502, Historical and Statutory Notes, Revision Notes and Legislative Reports, 1983 Acts.

[6]      49 U.S.C. § 304(a)(1) and (2) formerly provided:

It shall be the duty of the [Secretary]

(1) To regulate common carriers by motor vehicle as provided in this chapter, and to that end the Commission may establish reasonable requirements with respect to continuous and adequate service, transportation of baggage and express, uniform systems of accounts, records, and reports, preservation of records, qualifications and maximum hours of service of employees, and safety of operation and equipment.

Title 49 U.S.C. § 303(a)(14) defined a "common carrier by motor vehicle" as "any person which holds itself out to the general public to engage in transportation by motor vehicle in interstate or foreign commerce of passengers."  On the other hand, "contract carrier by motor vehicle" was formerly defined as follows:

> "motor contract carrier" means-(A) a person, other than a motor common carrier, providing motor vehicle transportation of passengers for compensation under continuing agreements with a person or a limited number of persons-(i) by assigning motor vehicles for a continuing period of time for the exclusive use of each such person; or (ii) designed to meet the distinct needs of each such person; and (B) a person providing motor vehicle transportation of property for compensation under continuing agreements with one or more persons-(i) by assigning motor vehicles for a continuing period of time for the exclusive use of each such person; or (ii) designed to meet the distinct needs of each such person.

49 U.S.C. 304(a)(15).

For their part, defendants do not contend that Regency held itself out to the general public as providing transportation in

---

(2) To regulate contract carriers by motor vehicle as provided in this chapter, and to that end the Commission may establish reasonable requirements with respect to uniform systems of accounts, records, and reports, preservation of records, qualifications and maximum hours of service of employees, and safety of operation and equipment.'It shall be the duty of the [Secretary] . . . (1) to regulate common carriers by motor vehicle [t]o regulate contract carriers by motor vehicle as provided in this chapter, and to that end the Commission may establish reasonable requirements with respect to uniform systems of accounts, records, and reports, preservation of records, qualifications and maximum hours of service of employees, and safety of operation and equipment.'

interstate commerce.  Instead, they urge that the exemption
applies because Regency held itself out to the Medicaid Division
as providing transportation in interstate commerce by virtue of
its contract with the Medicaid Division.  Thus, despite its
assertion to the contrary, Regency does not squarely fall within
the definition of a "common carrier by motor vehicle" as formerly
defined in 49 U.S.C. § 304(a)(14).  Instead, it would appear that,
under the definitions formerly set forth in the Motor Carrier Act,
Regency would be more properly characterized as a "contract
carrier by motor vehicle."  As the "holding out" language is
notably absent from the definition of a "motor contract carrier,"
where, instead, the definition turns on "providing motor vehicle
transportation," defendants have not established that this case
falls within the ambit of Brennan, such that the court could
conclude that the exemption applies.

     "Exemptions under section 13 are construed narrowly against
the employer, and the employer bears the burden of proving the
applicability of a claimed exemption."  Id. (citing Smith v. City
of Jackson, Miss., 954 F.2d 296, 298 (5th Cir. 1992), and Dalheim
v. KDFW-TV, 918 F.2d 1220, 1224 (5th Cir. 1990)).  See also Arnold
v. Ben Kanowsky, Inc., 361 U.S. 388, 392, 80 S. Ct. 453, 4 L. Ed.
2d 393 (1960) (exemptions to the FLSA are "narrowly construed
against the employers seeking to assert them and their application
limited to those establishments plainly and unmistakably within

their terms and spirit"). Defendants have not sustained that burden with the proof presented on the present motion.

Accordingly, it is ordered that defendants' motion for summary judgment is denied.

SO ORDERED this 25th day of January, 2008.


/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE